WILLIAM H. HUME, Appellant, *v.* JOHN B. HENDRICKSON, Executor, etc., Respondent.

Plaintiff and J. (to whose rights plaintiff subsequently succeeded) leased of R. certain premises for twenty-one years, from May 1, 1855. R. covenanted that if the lessees erected a building, as specified, upon the demised premises, he would advance $20,000, to be secured by the lessees' bond, and a mortgage upon the leasehold interest; and at the termination of the lease he would, at his option, either pay the appraised value of the building or execute a new lease for a further term. The building was erected, and the money loaned and secured as covenanted. In May, 1858, the lessors executed to C., defendant's testator, a sublease of the premises for seventeen years and six months, from August 1, 1858. C. covenanted "to assume, pay off, and discharge" said mortgage. In August, 1858, said lessees executed to C. another instrument, by which they agreed, upon his compliance with the covenants in said sub-lease, at the expiration of the term therein specified, "at and upon the application" of C., or assigns, to grant a renewal for the further term of eighty-five days, and to execute an assignment of the right of said lessees to a renewal of the original lease, or to a payment of the moneys awarded to them for the value of the buildings and improvements. C. assigned the sub-lease and agreement; the holder thereof made no application for a renewal, as authorized by the agreement; but on the contrary gave written notice that he would not avail himself of such right; and at the expiration of the term specified in the sub-lease surrendered the premises. Plaintiff paid the mortgage, received from the lessors an agreed price for the improvements, and took a new lease. In an action on the covenant of C. to pay the mortgage, *held,* that plaintiff was entitled to recover; that under said covenant a cause of action arose upon failure of C. to pay the mortgage when it became due and payable; that conceding the sub-lease and subsequent agreement were to be taken and construed together, the covenant of C. in the former was not modified or affected by the latter; also, that, as neither C. nor his assigns availed themselves of the privileges of renewal, all their rights termi-

nated at the expiration of the term specified in the sub-lease, the original lessees were at liberty to deal with the property as they chose, and their subsequent action furnished no defense.

(Argued November 19, 1879; decided December 2, 1879.)

APPEAL from order of the General Term of the Court of Common Pleas, in and for the city and county of New York, reversing a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought upon a covenant on the part of Albert Clark, defendant's testator, hereinafter stated.

The referee found, substantially, the following facts:

On or about the 1st day of May, 1855, one William C. Rhinelander and Mary, his wife, executed to James Hume and William H. Hume, a lease of certain premises in the city of New York for the term of twenty-one years from May 1, 1855, at and for the annual rent of $4,000. The lessees agreed to erect a building upon the demised premises as specified, costing at least $25,000, within one year after the commencement of the term. The lessors covenanted that if the building was so erected they would at the expiration of the term, at their option, either pay for the building and improvements, or execute a new lease for a further term of twenty-one years, the rent for the new term and the value of the improvements to be fixed by appraisers. By agreement of the same date, said Rhinelander agreed with the Humes that, upon the completion of a building upon the lot demised as covenanted, he would advance to them $20,000, secured by their bond and a mortgage upon the said lease and the said building. The lessees having erected the said building executed to Rhinelander their bond of $20,000, payable on the 4th day of December, 1862, with interest, secured by their mortgage, upon their interest in the premises demised.

The said lessees, by indenture dated to May 1, 1858, demised to said Albert Clark the said premises for the term of seventeen years and six months, from the 1st day of August, 1858; i. e., until the 1st day of February, 1876, the said Clark,

covenanting to pay the Humes the yearly rent of $4,000, to keep and perform the covenants made by the Humes, in their lease from Rhinelander, and to assume, pay off and discharge the said mortgage of $20,000, with interest thereon, from the 1st day of May, 1858. By an agreement between the Humes and said Clark, dated the 2d August, 1858, after reciting the foregoing lease, in consideration thereof, and for other good and sufficient considerations, the Humes agreed with Clark that, upon his faithfully complying with all the covenants and agreements of said lease, at and upon the expiration of the term of said lease, they would "at and upon the application of the said Clark, his executors, administrators or assigns," grant a renewal of said lease, upon the same conditions, etc., for the further term of eighty-five days, and would also execute and deliver to him an assignment of all their equitable interests, under and by virtue of the covenants contained in the lease to them, for the renewal of said lease, and would authorize and empower the said Clark, his executors, administrators or assigns to receive to and for his or their use all moneys that might be awarded and become payable to them, the said Humes, under and by virtue of the said lease, for the value of the buildings and improvements upon the demised premises. On or about the 1st of February, 1860, Clark assigned to the Excelsior Fire Insurance Company the lease to him from the Humes, and also the agreement of August 2, 1858, subject to the covenants and conditions therein contained, which the said Excelsior Fire Insurance Company undertook and agreed to perform, except so far as said covenants had been performed or released. On or about the 28th of February, 1872, Marcus F. Hodges, as receiver of the said insurance company, assigned to one Monmouth B. Wilson, and on or about the 22d March, 1872, said Wilson assigned to Walter H. Lewis said lease and agreement by assignments containing, substantially, the same provision as the assignment from Clark to the Excelsior Fire Insurance Company. The sum secured by the bond and mortgage from Rhinelander was

not paid by Clark, or by any of those who succeeded to his leasehold interest ; and on the 24th of December, 1875, fore-closure proceedings were instituted by said Rhinelander against. the Humes and others to foreclose the mortgaged premises, and to hold the Humes liable on their bond in case of deficiency upon the sale. Upon the 20th of January, 1876, Walter H. Lewis gave written notice to the Humes that he would not avail himself of the renewal rights reserved in the agreement between the Humes and Clark of August 2, 1858, and sur-rendered possession to the Humes of the premises on the first of February following. Proceedings were thereupon taken in February, 1876, in accordance with the provisions of the original lease from Rhinelander to the Humes, for a valua-tion of the buildings on the demised lot, and to determine at what rent a new lease should be granted. The arbitrators. made their award on the 26th of February, 1876, valuing the building at $25,000, and determining the rent for the new lease to be given in accordance with the terms of the first lease at $5,000. On the 2d March, 1876, Rhine-lander, by notice to the Humes, made his election in con-formity to the provision of the original lease to grant a. renewal. On the 14th April, 1876, plaintiff and Alexander W. Hume, who had acquired all the interest of James Hume under the original lease, in consideration of the sum of $20,000, sold all their right, title and interest in and to the build-ing to Rhinelander, who thereupon executed to them a lease for the term of twenty-one years at the annual rent of $6,400. On the same day and at the same time the bond and mort-gage, with the interest thereon and the costs of foreclosure, were paid by plaintiff. On the 16th of May, 1876, James Hume assigned to the plaintiff all his interest in all claims arising out of the covenants of Albert Clark.

Upon these facts, the referee found, as matter of law, that defendants' testator never acquired any right or title to the building which was upon the demised premises at the time of the lease to him, and that his estate was liable for his fail-ure to pay off and discharge the bond and mortgage assumed

by him in said lease, and directed judgment for the amount thereof. Judgment was entered accordingly.

*Edmund Randolph Robinson*, for appellant. A cause of action against defendant's testator for breach of the covenant contained in the sub-lease to him accrued in favor of plaintiff and James Hume on December 4, 1862, when the mortgage debt became due and Clark failed to pay off and discharge it. (*Post* v. *Jackson*, 17 J. R., 239 ; affirmed in Court of Errors, *Jackson* v. *Post*, 17 id., 479 ; *Thomas* v. *Allen*, 1 Hill, 145; *Cady* v. *Allen*, 22 Barb., 388 ; *Gilbert* v. *Wyman*, 1 N. Y., 550 ; *Tyler* v. *Ives*, id., 554 ; *Rector, etc., Trinity Ch.* v. *Higgins*, 48 id., 532 ; *Belloni* v. *Freeborn*, 63 id., 383 ; *Martin* v. *Court*, 2 Term R., 640 ; *Toussant* v. *Martinnaut*, 2 id., 100 ; *Hodgson* v. *Bell*, 7 id., 97.) Plaintiff and James Hume were under no obligation to make a transfer until defendant's testator had offered to assume the obligations, as well as to receive the benefits of their reversionary interest. (1 Parsons on Cont. [6th ed.], 538 ; *Bruce* v. *Tilson*, 25 N. Y., 197 ; *M'Nit* v. *Clark*, 7 J. R., 465 ; *Kerr* v. *Purdy*, 51 N. Y., 629 ; *Maxwell* v. *Ward*, 13 Price, 674 ; *Allen* v. *Hilton*, 1 Fonbl. Eq., 432 ; *Rubery* v. *Jarvise*, 1 Term R., 229 ; *Maxwell* v. *Ward*, 13 Price, 674 ; *Eaton* v. *Lyon*, 3 Ves. Jr., 690 ; *City of London* v. *Mitford*, 14 id., 41 ; *Harries* v. *Bryant*, 4 Russell, 89 ; *Bayley* v. *Corporation*, 3 B. C. C., 529 ; *McCracken* v. *Finley*, Sneed [Ky.], 195 ; Adams' Eq. [Am. ed.], 88, 89 ; *B'klyn R. Co.* v. *Brown*, 38 How. Pr., 444.) Defendant's testator has had the whole consideration for his covenant, and cannot refuse to discharge it on the ground that any part of the consideration remains unperformed. But if he had only received a part, it is no bar to an action on his covenant that another part of the consideration has not been performed. (Parsons on Cont. [6th ed.], 527–533, notes Q and R, also pp. 676, 677; *Boone* v. *Eyre*, 1 H. Bl., 273 ; *McCullough* v. *Cox*, 6 Barb., 386 ; *Betts* v. *Perine*, 14 Wend., 219 ; *Tompkins* v. *Elliott*,

5 id., 496.) The covenant to pay the mortgage was not concurrent with or dependent upon the covenant to assign the reversion, and never became concurrent with or dependent upon such covenant, but was an independent undertaking. (*Smith* v. *Betts*, 16 How. Pr., 251; *Dox* v. *Dey*, 3 Wend., 356; *Dey* v. *Dox*, 9 id., 129, 133.)

*William P. Chambers*, for respondent. Covenants should be construed according to the meaning of the parties and the good sense of the case. (2 Parsons on Cont. [6th ed.], 676; *Ritchie* v. *Atkinson*, 10 East, 295; *Glaholm* v. *Hays*, 2 M. & G., 266; *Barruso* v. *Madan*, 2 J. R., 148; *Smith* v. *Woodhouse*, 2 B. & P., 240; *Morton* v. *Lamb*, 7 Term R., 130; *Glazebrook* v. *Woodrow*, 8 id., 371; *Wright* v. *Smith*, 4 Watts & Serg., 533; *Tompkins* v. *Elliott*, 5 Wend., 496.) The time of payment of the mortgage was not of the essence of the contract, because it had not been made so. (*Hubbell* v. *Von Schœning*, 49 N. Y., 326.) Where one party is to do a thing on, or upon, or when another party does another thing, the former cannot compel the latter to perform without tendering an offer of performance on his part. (*Adams* v. *Williams*, 2 W. & S., 227; *Divine* v. *Divine*, 58 Barb., 264; *Dunham* v. *Mason*, 4 Seld., 508; *Culver* v. *Burgher*, 21 Barb., 234.) The covenant of Clark to pay the mortgage which, before February 1, 1876, might have been enforced as a condition precedent, at that date became, by lapse of time, a covenant concurrent or dependent so far that the Humes could not enforce it without averring readiness or offer to perform on their part. (*Gillum* v. *Dennis*, 4 Ind., 417; *Irwin* v. *Lee*, 34 id., 319; *Beecher* v. *Conradt*, 13 N. Y., 108.) It does not necessarily render a covenant independent that it goes only to a part of the consideration. (*Grant* v. *Johnson*, 5 N. Y., 247.) Under the lease to Clark, and the agreement of second of August, Clark acquired an equitable interest in the renewal for the eighty-five days, and also in the "equitable interests" which the Humes had under the Rhinelander lease

in the covenant of the Rhinelanders, for a new twenty-one year lease or for payment for the building. (*Champion* v. *Brown*, 6 J. Chy., 402; *Hathaway* v. *Paine*, 34 N. Y., 103; Sugden on Vend. [8th Am. ed.], 175.) A right to a specific performance is available as an equitable defense in this action. (Story's Eq. Jur., § 76; *Laird* v. *Smith*, 44 N. Y., 619; *Duffy* v. *O'Donovan*, 46 id., 227; *Hubbell* v. *Von Shoening*, 49 id., 330, 331; *Giles* v. *Austin*, 62 N. Y., 486; Fry on Spec. Perf. [2d Am. ed.], 412; Willard's Eq. [Potter's ed.], 295; *Waters* v. *Travis*, 9 J. R., 465; *Allerton* v. *Johnson*, 3 Sandf. Chy., 72; *Dobson* v. *Pearce*, 12 N. Y., 166; *Fost* v. *Sprague*, 12 How., 358; *N. Y. C. Ins. Co.* v. *Nat. P. Ins. Co.*, 4 Kern., 90; *Vassar* v. *Livingston*, 13 N. Y., 248; Voorhie's Code, § 150; Story's Eq. Jur., § 1521.) Only damages for the actual injury sustained could be recovered. (Sedg. on Dam. [4th ed.], 235, 259, 430; 2 Pars. on Con. [3d. ed.], 432.) Plaintiff was chargeable with the benefits accruing to him as against his claim for damages. (*Laraway* v. *Perkins*, 10 N. Y., 371; *Baker* v. *Connell*, 1 Daly, 469; *Harris* v. *Bernard*, 4 E. D. Smith, 195; *Levenworth* v. *Packer*, 52 Barb., 132; *Vassar* v. *Livingston*, 3 Kern., 256; 2 Duer, 642; 6 Bosw., 458; *Henning* v. *Punnett*, 4 Daly, 545; *Taylor* v. *Read*, 4 Paige; 561.)

DANFORTH, J. The defendant claims that the lease from William and James Hume to Clark, dated May 1, 1858, and the agreement between these parties, dated August 2, 1858, are *in pari materia* and should be construed together. It is in this aspect that the defendant's case is the strongest, and while we are not satisfied that it could be sustained upon the evidence or by any just inference from the contents of the papers, we shall, in our examination of the question presented on this appeal, regard the claim as established. At the time of the execution of those instruments, James and William H. Hume were liable upon their bond to Rhinelander, dated December 4, 1855, in the sum of $20,000, payable December 4, 1862, and the premises in question

were mortgaged to secure its payment. Under the lease of May 1, 1858, from James and William H. Hume, Clark acquired the right to the use of the mortgaged premises for the term of seventeen years and six months from the 1st of August, 1858, "paying therefor the yearly rent of $4,000," and subject to the provisions of a lease executed by the Humes to Roder and others (the terms of which do not appear), and subject, also, to all the provisions, covenants and conditions contained in the lease of the premises, bear-.ing date May 1, 1855, executed by Rhinelander and wife to the Humes, and as to the performance of the stipulations and covenants in these two instruments, Clark was to stand in their place. It is also provided therein that the lease is subject to the mortgage above referred to, and Clark covenants and agrees to pay off and discharge the same with interest from the 1st day of May, 1858. The lease contains these covenants and is signed by Clark. We have, therefore, an express and formal covenant on his part for the payment of the mortgage, and it was apparently as much the induce-ment or consideration for the letting by the Messrs. Hume as was his promise to pay the annual rent. No provision is made for its re-payment or any contingency suggested upon the happening of which he shall be relieved. His position in regard to it is in no sense different, so far as the instrument of May first is concerned than it would have been if he had paid the sum of $20,000 in cash at the time of its execution as a bonus or premium for the lease. As it was, he became bound at that moment to discharge the mortgage ; the interest as it accrued from time to time and the principal sum when the mortgage came to maturity ; and there is not, in the instrument by which this obligation was assumed, any pro-vision for the return to him of any benefit of any kind, save in the enjoyment of the premises. Nor do we understand that the learned counsel for the respondent or the learned court whose judgment is under review, claim otherwise ; but the judgment and contention here, in its support is put upon the ground that the agreement of August 2, 1858, warrants and requires.

a very different construction.   So far as the question in hand is concerned, we discover no such necessity, nor do we find in it any term or provision material to the case and affecting the point in dispute.   The conclusion reached upon the lease of May first is that the obligation on the part of Clark in respect to the mortgage was absolute and unconditional.   It does not seem to have been modified by the agreement of the second of August.   Under that instrument he would, at the expiration of the term granted in May, be entitled to a renewal of the lease at the same rate of rent for the further term of eighty-five days, and an assignment of all the equitable interests of the Messrs: Hume under the covenants contained in the lease from Rhinelander to them of May 1, 1855, for a renewal of said lease from Rhinelander, and an authority or power to receive to his own use all moneys that might be awarded and become payable to the Messrs. Hume under the lease from Rhinelander, for the value of the buildings and improvements upon the premises.   There is here no reference to the mortgage, or to the liability of Clark to pay it; and incorporating these provisions into the lease of May 1, 1858, would not affect its terms.   It would add to the undertaking of the Messrs. Hume, but would not diminish their right to have the mortgage paid by Clark.   Nor was Clark to derive any benefit from this fresh undertaking on the part of the Messrs. Hume, unless he concluded to take a renewal of the lease and applied therefor.   Some action on his part was necessary and to be taken a reasonable time before the renewal could be required.   (Leake on Con., 678; *M'Nitt* v. *Clark*, 7 J. R., 465; *Maxwell* v. *Ward*, 13 Price, 674.) It must be conceded that in this respect there was not only an entire omission on Clark's part, but by his own act he put it out of his power to make the election.   The mortgage became due December 4, 1862.   It had not been paid, and in the meantime Clark, on the 1st of February, 1860, for a valuable consideration, sold and transferred the two instruments above referred to of May first and August second to the Excelsior Fire Insurance Company, and in terms assigned

to them all his right of renewal of said lease " or payment for buildings and improvements as therein provided, with all the premises therein mentioned and described, and the buildings thereon with the appurtenances," subject to the covenants and conditions contained therein, and all of which the insurance company undertook to perform; and subject also to the mortgage above mentioned. Afterwards through several mesne assignments similar in form to the one just referred to, the instruments of May first and August second, and the rights and privileges thereunder, became vested in one Lewis, and he, on the 20th of January, 1876, gave notice to the Messrs. Hume that he should not avail himself of the privilege of renewal given by the papers referred to, and on the 1st day of February, 1876, he surrendered the premises to them. There was not only then an omission on the part of Clark or his assigns to avail themselves of the privilege of renewal,— and on this depended the other rights,— but there was an absolute refusal to accept a renewal of the lease and it is difficult to see how, after that, any right, legal or equitable, under either of the instruments referred to, remained in Clark or his assigns. The Messrs. Hume were then at liberty to deal with the property and the interests conferred by the lease from Rhinelander to them as they should choose. Under this lease it was optional with Rhinelander at the expiration of the term granted by it (twenty-one years from the 1st day of May, 1855) to pay for the building erected by the Messrs. Hume on the premises, at a valuation ascertained as therein provided, or grant to them a new lease for the further term of twenty-one years at a rent fixed by certain persons to be selected for that purpose. On proceedings had for these purposes as provided in the lease the buildings were appraised at $25,000, and the rent at which a new lease might be granted was fixed at $5,000. Rhinelander elected to give a new lease, but in the meantime, the mortgage remaining unpaid, he had, in December, 1875, begun proceedings for its foreclosure. Prior to the 14th of April, 1876, James Hume transferred his interest in

the lease from Rhinelander to William H. Hume and Alexander W. Hume, and they, on the nineteenth of April, sold the building erected by James and William Hume to Rhinelander for $20,000, which he paid, and they, (William H. and Alexander W. Hume), at the same time paid up the mortgage and costs of foreclosure, and took a lease of the premises from Rhinelander for twenty-one years at the annual rent of $6,400. In these events we are unable to discover any defense against the plaintiff's claim. The undertaking on the part of Clark, absolute in the first instance was not subsequently cut down or qualified. His liability was not for such deficiency as might remain due after the mortgaged premises had been sold and the proceeds applied upon the mortgage, but for the payment of the whole. Nor was it to save the Messrs. Hume harmless,— if that had been its purpose, very different language would have been employed,— but to pay the mortgage ; and Hume's right of action was complete and perfect the moment the mortgage became due and remained unpaid. (*Port* v. *Jackson*, 17 J. R., 239; affirmed id., 479; *Thomas* v. *Allen*, 1 Hill, 145; *Gilbert* v. *Wiman*, 1 N. Y., 550; *Rector* v. *Higgins* 48 id., 532; *Belloni* v. *Freeborn*, 63 id., 383.)

Nor am I able to see how the course pursued by Alexander and William Hume is open to the objection that it was legally prejudicial to Mr. Clark or his estate. None of the conditions undertaken by Clark were performed, and the Humes were bound to pay their bond and mortgage. There was nothing in the relations of the parties or in the various reciprocal obligations covered by the agreements in question which prevented them or their assigns from dealing with the property to their own advantage. The most favorable view of Clark's position is, that under the agreement of August 2d, he acquired an option which if he had retained and exercised would—as we now see—have entitled him to a further lease for the term of twenty-one years at the increased rent of $5,000. He would still have been bound to pay the Hume mortgage, and would not have received

anything for the value of the buildings ; for Rhinelander having elected, as he lawfully might, to give the lease, was thus relieved from the other alternative and could not have been compelled to pay for the improvements. (*Rutgers* v. *Hunter*, 6 John. Ch., 215.) It is not unlikely that Lewis had in view this result when he surrendered the premises and refused to go further in the matter. At least he did not choose to be burdened with it. However that may be, he exercised the option which he had bought of Clark and declined the renewal, and this was binding and irrevocable. The plaintiff acted upon this refusal and made, as the defendant now claims, a good bargain ; but if so (although the answer alleges the contrary), this was done without fraud or misbehavior towards Clark or his assigns. Nor does the defendant even now offer to relieve William H. and Alexander Hume from the burden of this bargain ; they stand as lessees of the premises for the term of twenty-one years, at an annual rent of $6,400, and if the defendant should succeed in this action, they would remain liable and the defendant free from the obligation assumed by his testator upon a full consideration. Such a result would be most unjust.

As these views lead to the conclusion that the defendant established no defense, it is unnecessary to consider other questions presented by the learned counsel for the respondent ; for however answered they fail to disclose any ground on which the order of the General Term can stand. It should therefore be reversed, and the judgment entered on the report of the referee affirmed, with costs.

All concur.

Order reversed and judgment affirmed.