## ADAMS v. SYMON.

*(Supreme Court, Special Term, New York County.  January, 1889.)*

1. REFERENCE—FORM OF ACTION—ELECTION.

The fact that a plaintiff resists a motion to strike a cause from the special term calendar on the ground that it is properly triable by a jury at circuit, which motion is denied, does not amount to an election by him to prosecute the action for equitable relief only, so as to prevent a referee, appointed to hear and determine the whole issues, from rendering a money judgment for damages, if such judgment is consistent with the complaint and embraced in the issues.

2. MORTGAGES—SALE OF MORTGAGED PREMISES—LIABILITY OF PURCHASER.

A mortgagor against whom a personal judgment has been rendered for the deficiency upon foreclosure, can, without first paying the judgment, recover in an action against a purchaser of the land who has assumed the mortgage as part of the consideration for the conveyance, and the measure of his damages is the amount for which he is still liable on the debt and mortgage.

Trial before a referee.

Action by John Hunt Adams against Robert R. Symon, to recover damages for the failure of Symon to pay a mortgage on land conveyed to him by Adams, and which Symon had assumed to pay as part of the consideration for the conveyance.  On the foreclosure of the mortgage a personal judgment had been rendered against Adams for the deficiency, and the sale of the premises resulted in a deficiency of $61,605.23.  An action had been brought against Adams for this amount, and his property seized under an attachment.

*Simpson, Thacher & Barnum,* (*Thomas Thacher,* of counsel,) for defendant.

ODELL, R.   The defendant insists, in the first place, that no money judgment for damages can be rendered against him, because the plaintiff has heretofore elected to prosecute the action for equitable relief only.   The facts are these:  After issue was joined, the plaintiff placed the cause upon the calendar of the special term for trial.   Thereupon the defendant moved to strike it from the calendar upon the ground that it is properly triable by "jury at a circuit term of this court."   This motion the plaintiff resisted, and it was denied, and afterwards, on the defendant's written consent, an order was made referring it to me "to hear and determine the whole issues therein."   My duty, under the order, seems to be plain.   I am to hear and decide all the matters in controversy, and may award "any judgment consistent with the case made by the complaint and embraced within the issue."   Code, § 1207; *Murtha* v. *Curley,* 90 N. Y. 372, 377.   I do not see that the character of the action was at all changed, or that any right was waived by the plaintiff, or that his legal rights or remedies against the defendant were in any respect prejudiced or limited, by the proceeding at special term, above referred to.

The defendant further insists that no cause of action against him for damages has been shown, because the plaintiff has not himself paid any portion of the judgment for deficiency.   This objection presents the main question in the case.   A grantee of lands, subject to a mortgage which he assumes to pay as part of the consideration for the conveyance, becomes personally liable for the mortgage debt.   *Comstock* v. *Drohan,* 71 N. Y. 9, 13; *Hamill* v. *Gillespie,* 48 N. Y. 556, 559.   A bare assumption of a mortgage is equivalent to an express covenant to pay it, (*Schley* v. *Fryer,* 100 N. Y. 71, 2 N. E. Rep. 280,) although the deed may not be signed by the grantee, (*Thorp* v. *Coal Co.,* 48 N. Y. 253, 256.)   And the mortgagee may enforce the grantee's liability by an action at law upon the implied covenant, without first resorting to a foreclosure of the mortgage.   *Burr* v. *Beers,* 24 N. Y. 178; *Thorp* v. *Coal Co., supra.*   It is settled that, in case a grantee makes default in the payment of a mortgage, which he has agreed or assumed to pay, the grantor may maintain an action in equity to compel him to perform his contract.   *Rubens* v. *Prindle,* 44 Barb. 336, 345; *Marsh* v. *Pike,* 10 Paige, 595; *Cubberly* v. *Yager,* 42 N. J. Eq. 289, 11 Atl. Rep. 113.   Whether he may pursue the grantee

at law by an action for damages for breach of covenant must depend upon the nature of that covenant, and of the duty, and consequent liability, to the grantor thereby incurred by the grantee. The cases recognize a broad distinction between a mere covenant of indemnity or a covenant which indemnifies against loss or damage and one which indemnifies against liability or claim. *Port* v. *Jackson*, 17 Johns. 239, is a leading case, and illustrates the distinction. Port was the grantee of a term of years, and liable to his grantor for the reserved rent. He assigned the term to Jackson, who, in consideration thereof, covenanted, among other things, to keep and perform all the "covenants, conditions, provisos, payments, and agreements" imposed upon Port by the terms of the indenture of demise to him. The declaration alleged that Jackson had failed to perform his covenant to pay the rent which had become due from Port to Barlow, (Port's grantor,) and that on March 25, 1818, the sum of £832 1s. 3d. was in arrear and unpaid to the said Barlow. It was objected that the declaration was insufficient, because it contained no allegation that the plaintiff had paid the rent in arrear, or been damnified by the breach of the defendant's covenant. The supreme court said: "It is argued, on the part of the defendant, that until the plaintiff has paid the rent he cannot maintain an action at all; or, in other words, that the covenant is not broken until the plaintiff has satisfied the rent. This is a mistake. The covenant is that the defendant shall pay the rent to the lessor as it falls due, and the moment the day of payment is passed, and the rent is left unpaid, the covenant is broken, as well according to its words as its spirit, and the action is, at all events, maintainable."

The court further held that the measure of plaintiff's damages was the amount of the rent due. VAN NESS, J., said: "The covenant is not that the defendant shall indemnify the plaintiff against his own covenant in the lease, or against any damage which he may sustain, but it is express and positive that the defendant will pay the rent for which the plaintiff continued to be liable, notwithstanding the assignment. The sum to be paid is certain and liquidated, and the breach of the covenant consists in the non-payment of it, and a plea of *non damnificatus* would therefore be no answer to the declaration. The contract between the parties amounts to a covenant on the part of the defendant to pay a present debt of the plaintiff, which would become payable, from time to time, to Barlow, the lessor; and it would be against all reason and justice to permit the defendant to say that the plaintiff shall himself first pay and advance the money before his right of action against the defendant to recover it arises." The case received a unanimous affirmance in the court of errors (17 Johns. 479,) where the chancellor said: "He [the defendant] covenants to keep and perform all the covenants which Port had made to Barlow, and which, on the part of Port, were to be 'paid, done, and performed,' and one of these covenants was to pay the rent. Jackson's covenant was therefore not a mere covenant of indemnity. It was, in substance and effect, that he would pay that rent for Port, and the averment is that he has not paid the rent, and that it is in arrear and due. The breach, if not in the very words of the covenant, is according to its sense and meaning, and such an assignment has always been held sufficient. * * * Where a defendant has undertaken to do an act in discharge of the plaintiff from such a bond or covenant he must show, specially, matter of performance, and this Jackson ought to have shown in this case; but, where the defendant has undertaken to acquit and discharge the plaintiff from any damages by reason of his bond or covenant, he then merely undertakes to indemnify and save harmless, and the plaintiff is then bound to show his damages. * * * In my humble opinion, we should pervert the plain sense and language of the covenant entered into by Jackson if we should turn it into a mere covenant to indemnify Port, when it was evidently a covenant to pay the rent for and instead of Port. Port was not bound to go and pay the rent, or have it recovered from him by

due course of law, before he could resort to Jackson. He was not bound to subject himself to such previous distress or inconvenience. 'Jackson had undertaken to keep his covenant for him; that is, to go and pay the rent, as it from time to time became due. * * * I cannot raise a doubt in my mind as to the construction of the covenant."

The doctrine of *Port* v. *Jackson* has never been denied or questioned in the courts of this state, but has been approved and followed in a multitude of cases. *Rector, etc.*, v. *Higgins*, 48 N. Y. 532, was an action by lessor against lessee upon a covenant in the lease whereby the lessee agreed "to bear, pay, and discharge" all taxes and assessments that should be imposed upon the demised premises during the term. Two assessments for about $5,000 were laid upon said premises. These the lessee neglected to pay. They were not paid by the lessor, and it did not appear that any proceedings had been taken by the city to enforce collection. The action was brought upon the lessee's covenant, and at the trial a verdict was directed for the plaintiffs. The general term reversed this ruling, (4 Rob. N. Y. 1, 372,) holding that, as the plaintiffs had paid nothing, they had sustained no injury, and could recover only nominal damages. But the court of appeals sustained the trial judge, and held that the plaintiffs were entitled to judgment for the whole amount of the assessments, saying that "the distinction between a covenant or promise, whereby the defendant makes the amount to be paid his own debt, and one simply of indemnity, whereby the covenant or promise is not broken until the amount has been paid by the plaintiff, pervades all the cases upon this subject, from the case of *Jackson* v. *Port*, 17 Johns. 479, when the rule became somewhat settled and defined, until that of *Gilbert* v. *Wiman*, 1 N. Y. 550." "The distinction," it is said in the latter case, "is very important. * * * It is the distinction between an affirmative covenant for a specific thing and one of indemnity against damage by reason of the non-performance of the thing specified. The object of both may be to save the covenantee from damages, but their legal consequences to the parties are essentially different." *Belloni* v. *Freeborn*, 63 N. Y. 383, was an action on a bond given by the defendants, wherein they covenanted that one William H. Buckman should pay the rent of certain premises, (for which rent Buckman and the plaintiff were jointly liable,) and should hold the plantiff "harmless from any and every liability for or on account of the rent of the said premises for the year commencing May 1, 1872, and ending May 1, 1873." The rent was not paid by Buckman, and Belloni sued defendants upon their bond. The court held that he was entitled to recover the full amount for which he was liable under the lease, although he had not paid the same. "Had this bond," Judge ALLEN says, "been conditioned solely to indemnify and save harmless from damages, by reason of the liability, the obligee, the recovery would necessarily have been limited to the actual damages sustained by him. He could only have recovered to the amount of actual damnification. * * * When the bond is, as in this case, conditioned as well to pay the debt or sum specified as to indemnify and save harmless the obligee against his liability to pay the same, the obligee may recover the entire debt or demand upon default in the payment without having paid anything. * * * *Non damnificatus* would have been no answer to the present action." So in *Kohler* v. *Matlage*, 72 N. Y. 259, 266, CHURCH, C. J., says: "It is settled that upon an obligation to do a particular thing, or to pay a debt for which the covenantee is liable, or to indemnify against liability, the right of action is complete on the defendant's failure to do the particular thing he agreed to perform, or to pay the debt or discharge the liability. * * * The distinction is clearly defined between such an obligation and an indemnity against loss or damage by reason of a liability. In the former case the covenantee is to be saved from the thing specified; and in the latter, from the consequences of it. * * * In both cases courts seek to carry out the contract as made by the parties."

Many other cases holding the same doctrine have been cited by the learned counsel for the plaintiff. *Thomas* v. *Allen*, 1 Hill, 145; *Churchill* v. *Hunt*, 3 Denio, 321; *Cady* v. *Allen*, 22 Barb. 388; *Seligman* v. *Dudley*, 14 Hun, 186; *Smart* v. *Smart*, 24 Hun, 127; *Wicker* v. *Hoppock*, 6 Wall. 94; and others. In some of them the facts were substantially like those presented by the case at bar. In *Sparkman* v. *Gove*, 44 N. J. Law, 252, lands were conveyed "subject to certain mortgages now liens," etc., "which mortgages are assumed by the party of the second part." In *Foster* v. *Atwater*, 42 Conn. 245, the language was: "Said premises are conveyed subject to $1,900 mortgages, which, with accrued interest, the grantee assumes and agrees to pay, and save me harmless from the same;" in *Furnas* v. *Durgin*, 119 Mass. 508, "subject to mortgages amounting to $6,500, which the grantee hereby assumes and agrees to pay;" in *Locke* v. *Homer*, 131 Mass. 93, "except a mortgage to Margaret Aitkin of $4,000, which the grantee assumes and agrees to hold the grantor harmless from." In each of these cases it was expressly held that the grantee's undertaking was not a mere undertaking of indemnity, but an absolute engagement to pay the mortgage debt, and that upon his default the grantor could sue for a breach of the covenant, and recover the full amount of the debt, although he might not have paid the same. So in *Hume* v. *Hendrickson*, 79 N. Y. 117, plaintiff was the lessee of the premises on which he erected a building, with money borrowed from his lessor, and secured by a mortgage upon the leasehold interest. He sublet the premises to one Clark (defendant's testator) for a long term of years, Clark covenanting "to assume, pay off, and discharge" said mortgage. Soon afterwards Clark assigned his sublease. He did not pay the mortgage. Foreclosure proceedings were commenced. Plaintiff paid off the mortgage, then sold his interest in the building to his lessor for a large sum, and took a new lease of the premises. The suit was against Clark's estate for a breach of his covenant to pay the mortgage. The court (DANFORTH, J.) said: "The undertaking on the part of Clark, absolute in the first instance, was not subsequently cut down or qualified. His liability was not for such deficiency as might remain due after the mortgaged premises had been sold, and the proceeds applied upon the mortgage, but for the payment of the whole. Nor was it to save the Messrs. Hume harmless,—if that had been its purpose, very different language would have been employed,—but to pay the mortgage: and Hume's right of action was complete and perfect the moment the mortgage became due and remained unpaid." In *Sparkman* v. *Gove, supra*, the supreme court of New Jersey says: "On the breach of such a covenant, the damages recoverable are a sum sufficient to put the plaintiff in the position in which he would have stood if the covenant had been kept; that is, one of complete exoneration from the obligation which the defendant had agreed to discharge. Such sum is the whole amount of the plaintiff's debt. The authorities to this effect are clear and weighty. They distinguish between cases growing out of the mere liability of the plaintiff as surety for the defendant, or mere contracts to indemnify, on the one side, and cases resting upon the express agreement of the defendant with the plaintiff to pay a debt for which the plaintiff or his property is bound. In the former class, payment by the surety or actual loss must precede recovery; in the latter, the promisee, on breach, may recover the amount of the debt."

It is conceded by plaintiff's counsel that, as between grantor and grantee, the land is the primary fund for the payment of the mortgage debt. This is so, although the deed in addition contains a covenant on the part of the grantee to pay the mortgage. In *Wilbur* v. *Warren*, 104 N. Y. 192, 10 N. E. Rep. 263, Judge ANDREWS says that "the essential purpose of such a covenant is to indemnify the mortgagor against the contingency that the land may not bring enough to pay the mortgage debt, and thereby leave him exposed to a claim for a deficiency." I understand that to mean an indemnity against a liability,

and not against loss or damage resulting therefrom. In the present case the land has been sold, and the deficiency has been ascertained, and it does not require, therefore, the application of the extreme doctrine declared in the authorities above referred to.

It is insisted by the learned counsel for the defendant that the case of *Ayers* v. *Dixon*, 78 N. Y. 318, is conclusive in favor of his contention that, in an action upon a grantee's covenant to assume and pay a mortgage, the grantor can recover only actual damages; that is, such sum as he has been compelled to pay by reason of the grantee's default. Ayers was the owner of lands in South Carolina upon which there was a mortgage for $4,000. He contracted to sell an undivided one-half thereof to Dixon for $6,000, which Dixon agreed to "pay and deliver," as follows: "Three thousand dollars at the time of the delivery of the deed of the said premises, and an agreement by Dixon to assume and pay three-fourths of the Read mortgage, with interest." In the deed to Dixon, the consideration was expressed to be "the sum of six thousand dollars, of which amount three thousand dollars is paid in cash, and the balance by Dixon assuming to pay three-fourths of the mortgage," above described. Ayers died. The plaintiff was appointed administratrix. The mortgage fell due. No part of it was paid by either Ayers or Dixon. It was foreclosed, and the premises were sold for an amount exceeding the amount of the mortgage debt. The administratrix then sued to recover the $3,000, the share of the mortgage which Dixon had agreed, but failed, to pay. "The plaintiff assumes," Judge DANFORTH says, "that $3,000 of the consideration was unpaid, and for its recovery this action was brought." It was held that the action could not be maintained for two reasons,—because the agreed consideration for the conveyance had been fully performed by Dixon, and because Ayers, the grantor, died before any action accrued against the defendants, and the premises in question descended to his heirs, who were the parties injured by the breach of the defendant's covenant. The decision was that the particular cause of action which the plaintiff sought to enforce, did not exist, and that Dixon's liability, whatever it might be, was not to the plaintiff, but to other parties. It went no further. It is not at variance with *Port* v. *Jackson*, and kindred cases. It does not overrule or in any wise disturb them. Indeed, those cases are cited by the same learned judge in *Hume* v. *Hendrickson*, 79 N. Y. 117, in support of the proposition (quoted above) that Hume's right of action upon Clark's covenant to assume and pay "was complete and perfect the moment the mortgage became due and remained unpaid." It is my opinion that, upon the authorities, the plaintiff is entitled to recover, and that the measure of his damages is the amount for which he is still liable on account of the bond and mortgage.

The objection has been frequently made that, by allowing the covenantee to recover in an action of this character, the covenantor is exposed to the possibility of being compelled to pay his debt a second time, as his liability on the original obligation can be enforced against him. Lord CAMPBELL answered the objection in *Robinson* v. *Robinson*, 24 Law T. 112, and said that that possibility or peril arose from the covenantor's default in not performing his covenant. In *Rector, etc.,* v. *Higgins,* the court of appeals said that the objection was not substantial; and in *Sparkman* v. *Gove* it was said as follows: "Although this rule may occasionally expose the promisor to some danger of being twice compelled to pay the same debt, yet the risk can always be escaped by exact performance of his contract, and, where he is in default, the instances will be rare in which the court rendering judgment against him will not protect him from loss, and even in those instances a timely resort to equity will afford him relief." The plaintiff should have judgment for $61,605.23 and interest.