HAROLD R. GOEWEY *vs.* GEORGE L. SANBORN.

Berkshire.    September 15, 1931. — November 30, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Conflict of Laws. Contract,* Construction. *Practice, Civil,* Parties.

An offer in writing to purchase the entire capital stock of two corporations was on the condition, among others, that "all income taxes and other taxes that are either due or accrued and to be paid by the Corporation" should be paid by the seller. The offer was accepted and subsequently the seller executed an instrument transferring the stock upon the condition, among others, that "all taxes, either Federal, State or City, have been fully paid"; and providing that the seller should "cause to be paid any taxes if unpaid up to this date" and that "in the event . . . [one of the corporations] makes any payments or is damaged by reason of the violations of any of the conditions mentioned in this agreement, that the . . . [seller] will reimburse it to the extent thereof." It appeared that income taxes assessed by the United States against the other corporation for a period previous to the making of the agreement had not been paid. The corporations were organized under the laws of New York and did business there; and the parties were resident in New York and their agreement was made and was to be carried out in that State. In an action on the agreement by an assignee of the purchaser against the seller, it was *held,* that

(1) The meaning, force and effect of the agreement and the substantial rights of parties thereunder were to be determined in accordance with the law of New York;

(2) The above quoted provisions of the offer and the instrument of transfer, construed in the light of all the other provisions, meant that the income taxes of both corporations were to be paid by the defendant; he did not agree merely to save the purchaser harmless;

(3) The effect of such direct promise to pay was not restricted by the further separate promise of indemnity;

(4) The purchaser had a beneficial interest in his own right in the performance of the agreement, which was not for the benefit of the United States or of the corporation liable to pay the tax;

(5) The purchaser having such a beneficial interest, his assignee could maintain an action on the agreement irrespective of whether any beneficiary thereof not a party thereto could do so;

(6) The plaintiff was entitled to recover under the law of New York.

CONTRACT. Writ dated April 22, 1930.

The action was heard in the Superior Court by *W. A. Burns*, J., upon an agreed statement of facts. Material facts appear in the opinion. The judge ordered judgment for the defendant. The plaintiff appealed.

*W. H. Chorosh* of New York, (*J. F. Noxon, Jr.*, & *M. L. Eisner* with him,) for the plaintiff.

*J. M. Rosenthal*, (*J. M. McMahon* with him,) for the defendant.

RUGG, C.J. This is an action to recover damages for an alleged breach of a contract in writing made by the defendant with the assignors of the plaintiff. Two writings are set forth in the declaration. They appear to constitute a single contract so far as the issues here raised are concerned and will be treated accordingly. The facts alleged respecting them, so far as here material, are that in New York, on March 23, 1927, the plaintiff's assignors offered in writing to purchase from the defendant the entire capital stock of the Hudson Operating Company and the entire capital stock of the Flanders Holding Corporation for a stated price payable as specified. Part of that writing was in these words: "It is a condition of this offer that the said Corporations own the leasehold, all furniture, fixtures and supplies now used in conducting the Hotel Flanders . . . and that there are no violations of any kind against the said building in any of the Departments of the City or State of New York, and that all income taxes and other taxes that are either due or accrued and to be paid by the Corporation up to April 1st, shall be paid by you, and furthermore that the Flanders Holding Corporation will be free and clear of any debts or obligations of any kind excepting those specified in this offer, and that whatever debts are due or owing by either of the said corporations

up to the time of the transfer of the stock, to wit, April 1st, 1927, shall be paid by you, and you shall keep the Corporation indemnified against any claim except as herein mentioned, up to that time." This offer was accepted in writing by the defendant. By instrument dated March 31, 1927, the defendant transferred and assigned to the plaintiff's assignors the shares of capital stock described in the above offer upon the following among other conditions: "(d) That there are no debts of the said Flanders Holding Corporation in any amount, to any person, excepting current debts. (e) That all taxes, either Federal, State or City, have been fully paid. (f) That there are no violations of any kind in any of the Departments in the City or State. And the said George L. Sanborn hereby agrees that he will pay all of the said current debts aforementioned, if there are any; that he will cause to be removed in a reasonable time any violation that exists up to this date; that he will cause to be paid any taxes if unpaid up to this date, excepting the real estate taxes for the year 1927, for which allowance has been made by said Sanborn to this date. And the said George L. Sanborn hereby agrees that in the event the said Flanders Holding Corporation makes any payments or is damaged by reason of the violations of any of the conditions mentioned in this agreement, then the said Sanborn will reimburse it to the extent thereof." This instrument, which is stated to be under seal, was accepted in writing by the plaintiff's assignors. Further allegations are that the plaintiff's assignors complied with the terms of the offer and acceptance, that at the time of the transfer all Federal taxes had not been paid, and that there was due therefor $4,351.38, which the defendant upon demand refused to pay and which he owes the plaintiff. The case was heard without evidence upon an agreed statement to the effect that the defendant admitted the truth of the facts set forth in the declaration except the allegations of damage to the plaintiff, and that he denied any liability; that in 1923 an additional income tax was imposed by the United States against the Hudson Operating Company amounting to $4,351.38, which had not been paid in whole or in part by

either of the corporations, the plaintiff, or his assignors; that both the corporations are organized under and doing business in the State of New York; that the parties to the contract when it was made were residents of New York, and that the contract was made and was to be carried out in New York. The trial judge found for the defendant and ordered judgment accordingly. The plaintiff's appeal brings the case here.

The case was heard as a case stated. It presented only a question of law and left no room for inferences. *Frati* v. *Jannini*, 226 Mass. 430. *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519. It is to be considered in the same way on appeal.

The meaning, force and effect of the contract here in issue and the substantial rights of parties thereunder are to be determined in accordance with the law of New York. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 150. *Seemann* v. *Eneix*, 272 Mass. 189, 193.

The transaction disclosed by the instruments set out in the declaration was primarily essentially the sale by the defendant and the purchase by the plaintiff's assignors of all the capital stock of two corporations. The corporations were not parties to that transaction and had no interest in it. The only breach of the contract alleged is the existence of an outstanding unpaid Federal income tax against one of those corporations, the Hudson Operating Company. The parties made a definite agreement respecting such a tax in the form of conditions. Condition (e) of the bill of sale is unrestricted and specific in form to the effect that "all taxes," including Federal taxes, "have been fully paid." The defendant by condition (f) explicitly agreed to cause to be paid "any taxes if unpaid," with an exception not here material. These words are sweeping and unequivocal. They are not restricted to taxes of one corporation. They are not cut down by reference in condition (d) to the Flanders Holding Corporation. Both corporations are described in condition (b) relating to another matter. All the conditions have reference to the subject matter of the sale, which was the capital stock of both corporations. The

condition in the offer is not restricted as to income taxes because the singular of the word "corporation" instead of the plural happens to be used in one place. That condition as a whole, fairly construed and interpreted, means that the income taxes of both corporations were to be paid by the defendant. His agreement with the plaintiff's assignors on this point was direct and unambiguous. It is not reasonably susceptible of the interpretation that it was a mere agreement to save the plaintiff's assignors harmless. An agreement of that nature would be an indemnity contract. This construction is confirmed by the final paragraph of condition (f) of the bill of sale, which in plain terms is an agreement of indemnity for the benefit of the Flanders Holding Corporation. The effect of a direct promise to pay is not restricted by a further separate promise of indemnity. *Locke* v. *Homer*, 131 Mass. 93, 109. *Kohler* v. *Matlage*, 72 N. Y. 259. *Mills* v. *Dow*, 133 U. S. 423.

The tenor of the two instruments shows that the intent of the parties was to transfer these shares of capital stock free and clear of any liability save as expressly excepted. The promisees as purchasers of that stock had a direct pecuniary interest on their own account in the performance of this part of the contract by the defendant. Accrued and unpaid income taxes due from a corporation to the Federal government had a direct and immediate effect upon the promisees as purchasers of the entire capital stock of that corporation. This was not a contract for the sole benefit of a third person. The plaintiff's assignors had a beneficial interest in their own right in the performance of the contract.

The contract is to be interpreted in the light of the relations of the parties to each other and to the subject matter and the apparent purpose designed to be accomplished by it. *Atwater & Co. Inc.* v. *Panama Railroad*, 246 N. Y. 519. *Eustace* v. *Dickey*, 240 Mass. 55, 72. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 155. This contract bears no indication that it was intended to benefit the United States government, to which the income tax was payable, or the corporation from whom it was due. Neither party was looking out for the interests of any other person in framing

its terms. The parties were attempting to guard their own interests and to benefit themselves alone. We do not interpret the New York decisions as going to the extent of holding upon the facts here disclosed that third persons were intended to be the beneficiaries under such a contract as the present. In *Seaver* v. *Ransom,* 224 N. Y. 233, decided in 1918, the doctrine of *Lawrence* v. *Fox,* 20 N. Y. 268, as to the right of a third person to sue on a contract inuring to his benefit was discussed at large with ample citation of supporting New York authorities. It there was held, upon great deliberation, at pages 237–239, that the right of the beneficiary to sue on contracts made for his benefit "is at present confined, *first,* to cases where there is a pecuniary obligation running from the promisee to the beneficiary; 'a legal right founded upon some obligation of the promisee in the third party to adopt and claim the promise as made for his benefit.' . . . . *Secondly,* to cases where the contract is made for the benefit of the wife . . . affianced wife . . . or child . . . of a party to the contract . . . . The right of the third party is also upheld in, *thirdly,* the public contract cases . . . where the municipality seeks to protect its inhabitants by covenants for their benefit and, *fourthly,* the cases where, at the request of a party to the contract, the promise runs directly to the beneficiary although he does not furnish the consideration . . . . It may be safely said that a general rule sustaining recovery at the suit of the third party would include but few classes of cases not included in these groups, either categorically or in principle." That decision has been cited with approval in more recent decisions. See *H. R. Moch Co. Inc.* v. *Rensselaer Water Co.* 247 N. Y. 160, 166; *Dreyer* v. *Hyde,* 251 N. Y. 450, 456, and *Ultramares Corp.* v. *Touche, Niven & Co.* 255 N. Y. 170, 181. It seems to us that the contract in the case at bar does not fall within any of these classifications.

The defendant relies upon *Ayers* v. *Dixon,* 78 N. Y. 318, in support of a contention that, since under the law of New York the beneficiary of a contract although not a party to it may in certain instances bring an action in his own right

against the promisor, in order not to subject the defendant to a double liability the promisee is not allowed to maintain an action against the promisor. We are of opinion that that doctrine is not applicable to the case at bar, where the plaintiff's assignors as the promisees in the contract had a direct beneficial interest in their own right in the performance by the promisor. *Thomas* v. *Allen*, 1 Hill, 145. *Churchill* v. *Hunt*, 3 Denio, 321. *Belloni* v. *Freeborn*, 63 N. Y. 383. *Kohler* v. *Matlage*, 72 N. Y. 259. It is open to grave doubt on another ground whether *Ayers* v. *Dixon* supports the contention of the defendant. Respecting the scope of that decision it was said in *Adams* v. *Symon*, 6 N. Y. Supp. 652, at· 656: "It was held that the action could not be maintained for two reasons, — because the agreed consideration for the conveyance had been. fully performed by Dixon, and because Ayers, the grantor,. died before any action accrued against the defendants, and the premises in question descended to his heirs, who were the parties injured by the breach of the defendant's covenant. The decision was that the particular cause of action which the plaintiff sought to enforce, did not exist, and that Dixon's liability, whatever it might be, was not to the ·plaintiff, but to other parties. It went no further." The case at bar is similar to *Federal Credit Bureau* v. *Gotham Steam Laundry Co. Inc.* 246 N. Y. Supp. 495. Moreover, under the doctrine of *Seaver* v. *Ransom*, 224 N. Y. 233, there appears to be no beneficiary third person capable of suing on the contract.

So far as the decisions of this Commonwealth are concerned, it is plain that no third person could sue the defendant on this contract. *Locke* v. *Homer*, 131 Mass. 93, 107.

We are of opinion that the plaintiff is entitled to recover upon the authority of *Rector, etc., of Trinity Church* v. *Higgins*, 48 N. Y. 532. In that case, as in this, the contract of the defendant was to pay taxes. It was held that the promisee might recover without first paying the taxes, because the covenant was affirmative and positive and was

broken when the promisor failed to pay the taxes. To the same effect in principle are *Bowditch* v. *Chickering,* 139 Mass. 283, and *Richardson* v. *Gordon,* 188 Mass. 279.

The order of judgment for the defendant must be reversed. The agreed facts do not contain dates to enable us to state the precise amount for which judgment should be entered. The plaintiff is entitled to recover $4,351.38 as the principal, together with such interest as was due to the United States government thereon to the date of the writ and interest on this aggregate from the date of the writ to the date of judgment. The details of these amounts unless agreed by the parties must be determined by the Superior Court.

*So ordered.*