### CITY OF BROCKTON *vs.* TOWN OF CONWAY.

Plymouth. December 29, 1931. — January 26, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Pauper. Settlement. Notice. Name.*

A notice given in June, 1928, by a city to a town that a certain woman, "whose legal settlement" was in the town, was in the city "ill with pulmonary tuberculosis, a disease dangerous to the public health," that the expenses of her sickness were being borne by the board of health of the city, she having no means of paying for them, and "that all reasonable expenses which have been heretofore, or may hereafter be incurred by" such board were a legal claim against the town, for which demand was made, had annexed to it a statement of "Facts relative to settlement," which included the date and place of birth of the woman and the names of her parents; the name of her husband and date of her marriage to him, and his birthplace, the names of his parents and the places of their residence so far as known. *Held,* that

   (1) Such notice was a compliance with the requirements of G. L. c. 111, § 116, as amended by St. 1927, c. 91;

   (2) In the circumstances, the mere fact that, in such notice, the given name stated as that of the woman's husband was one by which he commonly was known instead of his legal given name, did not render the notice invalid.

In an action by the city against the town upon the claim above described for support of the woman in 1928, it appeared that her husband was born in the town in 1903; that his father died there in 1910; that his mother shortly thereafter moved from there and did not thereafter reside in the Commonwealth; that after the death of his father he lived elsewhere than in the town until in 1912, when he was taken into a family then residing in the town and in 1918 moved with them to the city and was living there when he married the woman in 1925. *Held,* that

(1) The settlement of the boy, who afterwards became the woman's husband, remained in the town after the death of his father and the removal of the mother from the Commonwealth;

(2) He did not lose his settlement in the town because of absence during his minority;

(3) He did not lose that settlement after reaching his majority, since five years had not elapsed between the date when he became twenty-one years of age and the date of the relief afforded to his family by the plaintiff;

(4) The husband did not lose his settlement in the town by virtue of St. 1926, c. 292, whereby G. L. c. 116, § 5, was recast, that statute not being retroactive in scope or effect.

Statutes relating to the settlement and support of paupers are prospective and not retroactive in operation unless a contrary intent is made plain by unequivocal words or by necessary implication.

CONTRACT for $299, "money paid for board and treatment of Grace Ness Adams, at the Plymouth County Hospital (she being ill with pulmonary tuberculosis) from April 18, 1928, to December 3, 1928," and interest. Writ dated July 9, 1929.

In the Superior Court, the action was heard by *Macleod*, J., upon an agreed statement of facts.

The notice given by the plaintiff to the defendant was signed by the executive officer of the board of health and read as follows:

June 29, 1928.

To the Town of Conway, Mass.

GRACE NESS ADAMS, whose legal settlement is in CONWAY        is in the City of Brockton, ill with pulmonary tuberculosis, a disease dangerous to the public health.

The expenses of her sickness are borne by the Board of Health of the City of Brockton, the patient herself having no means of paying for them.

You are hereby notified that all reasonable expenses which have been heretofore, or may hereafter be incurred by this Board in said case, are a legal claim against your town, under the provisions of the statutes of the Commonwealth, and we hereby respectfully demand payment thereof.

After the signature was the following:

Facts relative to settlement:

Born in North Easton, Mass., Aug. 30, 1903. Father Oliver Ness, mother Louise Caron. Grace married one Kenneth Adams April 4, 1925, in Brockton. He born in Conway, Mass., about 25 years ago. Lived with her in Brockton but three weeks and now of parts unknown. Left Brockton some time during 1925, and never heard from since. His father William or William Joseph Adams born in Canada and to Conway, Mass., several years ago; lived there on Mill St. until death in May, 1910. Mother Ange Andrews Adams left Conway shortly after his death and now living in New Britain, Conn. Sister of Kenneth, a Mrs. Caron, now living at 607 N. Montello St., this city.

Grace Ness Adams admitted to Plymouth County Hospital on April 18, 1928, at a cost of $9.10 per week.

Other material facts are stated in the opinion. The judge found for the plaintiff in the sum of $260. The defendant appealed.

The case was submitted on briefs.

*W. A. Davenport,* for the defendant.

*T. W. Prince,* City Solicitor, for the plaintiff.

BY THE COURT. This is an action of contract to recover money paid for the board and treatment of Grace Ness Adams, who had fallen into distress and was in need of immediate relief. The case was heard on an "Agreed Statement of Facts." See *Frati* v. *Jannini,* 226 Mass. 430; *Goewey* v. *Sanborn,* 277 Mass. 168.

Grace Ness Adams was the wife of Kenneth Adams. The plaintiff gave notice to the defendant on June 29, 1928, that Mrs. Adams was ill in the city of Brockton. The defendant on July 13, 1928, denied liability (1) because there was "no record of any Kenneth Adams being born here [in the town of Conway]," and (2) because if any child by the name of Kenneth Adams was "born here [in the town of Conway]

to Ange Andrews Adams . . . it would take the residence of its mother, as she left here more than five years before the child was 21 years old." Buell Adams was born in Conway June 22, 1903. His father died in Conway on May 6, 1910. The father, William Isaac Adams, had a settlement in Conway at the time of his death. He left surviving him his widow, Angeline Andrews Adams, also called Ange Andrews Adams, and four children including Buell Adams. Angeline Andrews Adams lived in Conway until August, 1910, when she removed from there and has not since that time resided in the Commonwealth. After the death of his father Buell Adams lived for a short time in Boston, and later in New Hampshire. In May, 1912, he was taken into the family of Mr. and Mrs. Caron, then residing in Conway, ";the latter being a sister of said Buell." In 1918 the Carons left Conway, moving to Brockton where they have since resided. Buell Adams continued to live with them until about the time of his marriage on April 4, 1925, to Grace Ness Adams. The mother of Buell Adams did not like the name Buell and began calling him Buell Kenneth, and finally dropped the name Buell and called him Kenneth. He was commonly known as Kenneth Adams since he was about two years old. He was called Kenneth by his sister, Mrs. Caron, and she states that she "has never heard him called anything but Kenneth since he was two years old."

The defendant contends that the notice given by the plaintiff was void because the name Kenneth Adams was not the name of Buell Adams. It also contends that if the notice was valid, Buell Adams had no settlement in Conway on May 29, 1928.

The notice was not invalid. It stated that Kenneth Adams was born in Conway. It gave the name of his father and the place of his residence and date of his death. The notice said that his mother, Ange Andrews Adams, left Conway shortly after the death of her husband and was living in New Britain, Connecticut. It also gave the name of his sister. It was sufficient to identify the person referred to and to put the defendant upon inquiry. *Shel-*

*burne* v. *Rochester*, 1 Pick. 470, 474. According to the agreed facts, Buell Adams was commonly called Kenneth Adams from the time he was two years old. As he was generally known by the name of Kenneth, the notice sufficiently revealed his identity and was valid. See *O'Brien* v. *Election Commissioners of Boston*, 257 Mass. 332, 340; *Fine* v. *Kahn*, 270 Mass. 557, 558. *Carver* v. *Taunton*, 152 Mass. 484, relied on by the defendant, is not in conflict.

The contention of the defendant that Kenneth Adams had lost his settlement in Conway on May 29, 1928, cannot be supported. He had a settlement in Conway in 1910 derived from his father, and perhaps after the death of his father, one derived from his mother. Whether after the death of his father he lived with his mother until she left Conway is not clear from the record. It is plain that he did not remove with her from Conway but lived with others. In any event, he did not lose his settlement in Conway because of absence during his minority. R. L. c. 80, § 1, Second. St. 1911, c. 669, § 1, Third. G. L. c. 116, § 1, Third. *Treasurer & Receiver General* v. *Boston*, 255 Mass. 499, 505. He did not lose that settlement after reaching his majority because five years did not elapse between June 22, 1924, when he became twenty-one years old, and the date of the relief afforded to his family by the plaintiff. He did not lose his settlement in Conway by virtue of St. 1926, c. 292, whereby G. L. c. 116, § 5, was recast. So far as here relevant, its provisions are: "Except as otherwise provided in this section, each settlement existing on August twelfth, nineteen hundred and eleven, shall continue in force until defeated under this chapter. . . . The settlement of a minor acquired under either clause Third or Fourth of section one, except the settlement of a female minor who has married, shall be defeated with the settlement of the parents. . . ." Statutes relating to the settlement and support of paupers are prospective and not retroactive in operation unless a contrary intent is made plain by unequivocal words or necessary implication. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 4, where the general principle is declared and where, at page 4, such

cases are collected. See, also, *Fullerton-Krueger Lumber Co.* v. *Northern Pacific Railway*, 266 U. S. 435, 437; *United States* v. *St. Louis, San Francisco & Texas Railway*, 270 U. S. 1, 3. There is nothing in the words or the apparent purpose of said c. 292 to indicate a legislative intent that it should be retroactive in its scope and effect. The words of that chapter do not express an intent to defeat, at the time of its passage, the existing settlement of a minor, or of one who as a minor had acquired a derivative settlement through parents, on the ground that at some previous time the settlement of the parents had been defeated. It cannot rightly be given that interpretation. The scope of that chapter as applied to the defeat of a settlement of a minor with that of parents is directed exclusively to events coming to pass in the future, not to those which already have come to pass.

In accordance with the agreed statement of facts, judgment is to be entered for the plaintiff in the sum of $260, with interest from the date of the finding.

*So ordered.*