Catharine E. Kohler, Executrix, etc., Respondent, *v.* August M. Matlage, et al., Impleaded, etc., Appellants.

K., plaintiff's testator, and defendant C. were copartners. After the death of K., plaintiff sold her interest in the property and business of the firm to C., he agreeing to pay the debts, to give a "purchase-money" chattel mortgage to secure the purchase-money and the debts, and also to give a bond with sureties to secure the payment of the debts. In pursuance of the agreement, C. gave a bond signed by himself and the other defendants as sureties, conditioned that C. "shall well and truly pay the balance of the debts of the concern, * * * within nine months after the date of this bond." Another part of the condition was that the obligors would save plaintiff harmless, etc. In an action upon the bond, *held*, that it was not simply one of indemnity, but an obligation to pay; and that upon default of payment by C. within the nine months, the right of action thereon became complete.

The firm business was carried on in the name of K. It was claimed by defendants that his estate was only liable contingently for the debts in case of failure to collect of C., the survivor. *Held*, untenable, as the creditors had the right to proceed against the estate of K., in the first instance, without resorting to C.

As to whether such a contingent liability would give the obligee the same rights as the direct liability, *quære.*

Also, *held*, that if plaintiff, by any act of bad faith, had impaired the security of the chattel mortgage to the injury of the defendants, they could avail themselves of it, but it would not release them save to the extent of the injury; that plaintiff held the mortgage to secure her individual claim for the purchase-money, in preference to any rights which defendants might have in it as security for the debts; and that, as it appeared that the mortgaged property was not worth more than the balance due on the purchase, it did not appear that defendants would have been injured if the mortgage had been released.

Also, *held,* that evidence of plaintiff's attorney as to the presentation of claims by firm creditors against the estate, and as to his investigations to prove their correctness, was competent.

(Argued January 17, 1878; decided January 29, 1878.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was upon a bond executed by defendant Chapman as principal, and the other defendants as sureties, conditioned as follows: "That if the above-bounden William Henry Chapman, his heirs, executors, or administrators shall well and truly pay, or cause to be paid, unto the proper parties, the balance of the debts of the concern for manufacturing a variety of bread known as 'Kohler's Cream Bread,' remaining due and unpaid, upon the delivery of this bond, and which are stated by said Chapman not to exceed twenty-five hundred ($2,500) dollars, within nine months after the date of this bond, and shall well and truly pay, or cause to be paid, unto the proper parties, the quarterly rent agreed to be paid in and by a certain indenture of lease of the premises known as Nos. 416, 418, 420 and 422 Sixth avenue, in the city of New York, made by Thomas H. Faile, and the said Thomas H. Faile and Thomas H. Faile, Jr., surviving executors. of Edward G. Faile, deceased, to said John F. Kohler, bearing date the 13th day of April, 1871, and now remaining unpaid, and yet to be paid, to wit, the sum of twelve hundred dollars, due on the 1st day of November, 1873; and the further sum of twelve hundred dollars, due on the 1st day of February, 1874; and the further sum of twelve hundred dollars, due on the 1st day of May, 1874; and also all the taxes, Croton water taxes, insurance and other charges, required to be paid by the said John F. Kohler, in and by the terms of said lease; and shall also do and perform all the covenants and conditions in said lease contained, to be done and performed by the said John F.

Kohler; and shall also pay the rent agreed to be paid in and by a certain indenture of lease of the premises known by the No. 156 West Twenty-ninth street, in the city of New York, made by Richard Amerman to John F. Kohler, bearing date 2d day of March, 1869, and now remaining unpaid, and yet to be paid, to wit, the sum of one hundred and twenty-five dollars, due on the 1st day of November, 1873; and the further sum of one hundred and twenty-five dollars, to become due and payable on the first day of each and every month, until the 1st day of May, 1874, and shall do and perform all the covenants and conditions in said lease contained, to be done and performed by the said John F. Kohler, and shall forever hold harmless the said Catharine E. Kohler, executrix as aforesaid, her successors, heirs, executors and administrators, from the payment of the aforesaid debts, rents, taxes and other charges, and each and every part thereof, and from the performance of each and every of said conditions and covenants, pursuant to the terms of a certain agreement made and entered into by and between the said Catharine E. Kohler, executrix as aforesaid, and said William Henry Chapman, bearing even date with these presents, and without any fraud or other delay, then the above obligation is to be void, otherwise to remain in full force and virtue."

The court found substantially the following facts : That John F. Kohler died in the city of New York, on the 25th day of September, 1873, leaving his last will and testament by which plaintiff was appointed executrix, and she duly qualified as such. At the time of his decease, Kohler and the defendant Chapman were engaged in business in the city of New York, as copartners, in the manufacture of a variety of bread known as "Kohler's Cream Bread." On the 14th day of November, 1873, plaintiff, as executrix, entered into an agreement in writing, under seal with Chapman, whereby he bought and plaintiff conveyed to him all the property and interest which Kohler, or his estate had in said business, and by said agreement Chapman covenanted and agreed to

and with the plaintiff, simultaneously with the execution and delivery of it, to execute and deliver to the plaintiff his three promissory notes for $1,000 each, due in six, twelve and eighteen months respectively, from the date of said agreement, and to assume and pay all the debts of said concern existing at the date of said agreement, to pay certain rents and taxes, which are specified in the condition of the bond, and to execute and deliver to the plaintiff a "purchase-money" chattel mortgage covering all the personal property conveyed to him by said agreement, to secure the payment of the three notes and of the said debts, rents and taxes, and as further security agreed to execute, acknowledge and deliver to the plaintiff a bond in the penal sum of $6,000, conditioned for the payment by the said Chapman of the aforesaid debts, rents and taxes within nine months, with two sureties to be approved by said plaintiff. The bond in suit, the agreement, notes and chattel mortgage were simultaneously executed and delivered, and were each and all parts of one and the same transaction, and said notes, bond and chattel mortgage were executed and delivered in conformity with the said agreement; that there were no laches of the plaintiff or her agents in regard of her duties as to the collection of the amount due her under said agreement, or the enforcement of the liens acquired under said chattle mortgage. Chapman neglected to pay certain of the debts secured by the said bond within the nine months, and immediately after plaintiff duly notified the said sureties of Chapman's default and made due demand of payment of them. The sureties thereupon granted and signed an extension of the time for the payment of said unpaid debts for six months. At the expiration of said extended time, Chapman had still failed to pay and the sureties were duly notified.

It also appeared that Chapman paid one of the notes, but failed to pay the others. The chattel mortgage was foreclosed in July, 1875, and $438.35 was realized thereon. The debts unpaid were presented as claims against the estate, and were paid by plaintiff. The attorney for plaintiff was

permitted to testify under objection and exception as to the presentation of the claims against the estate, that they were investigated by him, as counsel for the executrix, and found correct. Chapman testified that the firm had goods of the claimants; that he examined the bills with plaintiff's attorney, and found them correct to the best of his knowledge. By the agreement, Chapman was allowed to sell three out of six horses, part of the firm assets, if not needed in the business. Chapman testified that, by an agreement between him and the plaintiff, made subsequent to the written agreement, he had permission to sell other horses than those for which permission was given him in the written agreement; but, on his cross-examination, he gives a different version of it, and admitted that he falsely stated to plaintiff's agent, when the extension of the bond was made, that he had these three other mortgaged horses out at pasture, when, in truth, he had previously sold them; and that he only let it be known that he had done this when the plaintiff sought for them to sell under the foreclosure of the mortgage. The sureties claimed that they were discharged by the neglect of the plaintiff to file a copy of the chattel mortgage within thirty days before November 14, 1875, to preserve the security. Copies had been filed for each of the preceding years, but no copy was filed after the foreclosure. The certificate to the copy filed in November, 1874, stated plaintiff's interest to be $2,000, that being the amount of the unpaid notes.

Further facts appear in the opinion.

*Jefferson Clark,* for appellants. To entitle plaintiff to recover, it was necessary to show either actual damage sustained, or a fixed liability incurred, even though the bond set forth in the complaint be held an absolute undertaking to pay the debts referred to. (Sedg. on Measure of Damages, m. p. 311; *Nat. As. and Ins. Ass.* v. *Best,* 2 H. & N., 604; *King* v. *Whitely,* 10 Paige, 405; *Vrooman* v. *Turner,* 15 Alb. L. J., 454; *In re Negus,* 7 Wend., 504; *McGee* v. *Roen,* 4 Abb., 8; *Poet* v. *Jackson,* 17 J. R., 479; *Belloni* v.

*Freeborn,* 63 N. Y., 383; *Thomas* v. *Allen,* 1 Hill, 145; *Wright* v. *Whiting,* 40 Barb., 236; *Churchill* v. *Hunt,* 3 Den., 321; *Furnas* v. *Durgin,* 49 Mass., 500; *Tracey* v. *Suydam,* 30 Barb., 115; *Richter* v. *Toppenhausen,* 42 N. Y., 373.) The evidence on behalf of plaintiff did not establish a cause of action. (*Aberdeen* v. *Blackmar,* 6 Hill, 324; *Crippen* v. *Thompson,* 6 Barb., 532, 536; *Scott* v. *Tyler,* 14 id., 205.) The court erred in admitting in evidence the two judgments by confession in the Supreme Court, and the executions thereon. (*Yorks* v. *Steele,* 50 Barb., 397; *Thomas* v. *Hubbell,* 15 N. Y., 405; *Bridgeport Ins. Co.* v. *Wilson,* 34 id., 275; *Lee* v. *Clark,* 1 Hill, 56.) The permission to Chapman, subsequent to the execution of the agreement, mortgage and bond, to sell property covered by said mortgage, was such a variation of the agreement between the creditor and principal as to release the sureties. (De Colyar on Guaranties, etc., 375, 376, 389; *Bonare* v. *McDonald,* 1 E. L. & Eq., 1; *Bacon* v. *Chesney,* 1 Stark. N. P., 192; *Dobin* v. *Bradley,* 17 Wend., 422; *Watts* v. *Shuttleworth,* 5 H. & N., 235; *Walsh* v. *Bailie,* 10 J. R., 180; *Lanus* v. *Barker,* id., 312; *McWilliams* v. *Mason,* 6 Duer, 276; *Rathbone* v. *Warren,* 10 J. R., 587; *Wright* v. *Johnson,* 8 Wend., 512.) The burden of proof was on plaintiff to limit the extent of the damages occasioned by her negligence, and having failed to do so, the court should have found that the sureties were discharged from all liability. (3 Kent's Com., *124; 1 Story's Eq. Jur., § 325; 5 H. & N., 235; *Hayes* v. *Ward,* 4 J. Ch., 123; *Pearl* v. *Deacon,* 24 Beav., 186, 191; *Capel* v. *Butler,* 2 S. & S., 457; *Mayhew* v. *Cricket,* 2 Swanst., 191; *Schroeppel* v. *Shaw,* 3 N. Y., 459.) The money received on foreclosure of the chattel mortgage should have been applied toward reimbursing plaintiff, for any money paid by her in extinguishing the firm debts, before looking to the sureties for reimbursement. (*Muir* v. *Leitch,* 7 Barb., 341; *Burtus* v. *Tisdall,* 4 id., 571; *Pearl* v. *Deacon,* 24 Beav., 186; *Williams* v. *Bush,* 1 Hill, 623.)

*George H. Forster*, for respondent. The bond, agreement, notes and chattel mortgage having been simultaneously executed and delivered, should be considered together, and the intention of the parties carried out. (*Van Wagner* v. *Terrett*, 27 Barb., 181.) The bond in suit was an absolute and unqualified agreement and obligation on the part of the sureties to pay, and its condition was broken on Chapman's failure to pay the debts within the specified time, and the legal liability of Chapman is the measure of damages. (*Gilbert* v. *Wenian*, 1 N. Y., 550; *Tyler* v. *Ives*, 1 id., 554; *Thomas* v. *Allen*, 1 Hill, 145; *Churchill* v. *Hunt*, 3 Den., 321; Sedg. on Dam., 311–313, 317, 318 [6th ed.], 378; *Jackson* v. *Port*, 17 J. R., 239, 479; *Wickee* v. *Hoppock*, 6 Wall., 99; *Wright* v. *Whiting*, 40 Barb., 235; *In re Negus*, 7 Wend., 499; *Belloni* v. *Freeborn*, 63 N. Y., 383; *Lyon* v. *Clark*, 8 id., 148 ; *Ruggles* v. *Holden*, 3 Wend., 216 ; *McKenzie* v. *Farrell*, 4 Bosw., 192.) The contract of suretyship is to be interpreted in the same manner as any other contract, and its words are to be taken as strongly against the guarantors as their sense will admit. (*Gates* v. *McKee*, 13 N. Y., 232; *Roch. City Bank* v. *Elwood*, 21 id., 88; *Belloni* v. *Freeborn*, 63 id., 383; *Christ* v. *Burlingame*, 62 Barb., 351.) Plaintiff was not bound to do any affirmative act to protect the sureties at her own expense, and without request or indemnity from them. (*Black River Bank* v. *Page*, 44 N. Y., 453; *Ramsen* v. *Beekman*, 25 id., 552; *Trustees Un. Col.* v. *Wheeler*, 61 id., 88–110; *Schroeppel* v. *Shaw*, 3 id., 446, 453, 457; *Suprs. Monroe Co.* v. *Otis*, 62 id., 88; *Hill* v. *Burke*, 62 id., 116; *Clark* v. *Sickler*, 64 id., 231; *King* v. *Baldwin*, 17 J. R.,174; *Hayes* v. *Lincoln*, 21 Barb., 249; *Kingsbury* v. *Williams*, 53 id., 142; *Pain* v. *Packard*, 13 J. R., 174.) Failure to sue Chapman sooner did not discharge the sureties. (*Huffman* v. *Hulbert*, 13 Wend., 377; *Warner* v. *Beardsley*, 8 id., 194; *Herrick* v. *Borst*, 4 Hill, 650; *Valentine* v. *Farrington*, 2 Edw. Ch., 53.) The refiling of the copy of the mortgage in November, 1874, with the statement then made, did not discharge

the sureties. (Story on Equity, 501; 3 Moore P. C. R., 315, 322.)

CHURCH, Ch. J. The plaintiff's testator and one Chapman had been copartners in manufacturing bread in the city of New York. The plaintiff, after the death of her testator, sold to Chapman her interest in the property and business of the firm for the sum of $3,000, the latter agreeing to pay all the debts of the firm, and certain rents and taxes, and to give a "purchase-money" chattel mortgage to secure the purchase-money, and also the payment of the debts, rents, etc., and also a bond with approved sureties to secure the payment of the debts, rents, etc.

The action is upon the bond executed and delivered in pursuance of this agreement against the principal Chapman, and the other defendants who were his sureties, and who alone defend.

The condition of the bond, so far as it affects the payment of debts, is, that if Chapman "shall well and truly pay, or cause to be paid unto the proper parties, the balance of the debts of the concern for manufacturing a variety of bread known as 'Kohler's Cream Bread,' remaining due and unpaid upon the delivery of this bond, and which are stated by said Chapman not to exceed $2,500 within nine months after the date of this bond," then it was to be void. Another part of the condition was that the obligors would save the plaintiff harmless from the payment of said debts.

The point was taken on the trial that this was a mere bond of indemnity against loss or damage, and that *non damnificatus* was a good answer. This position cannot be sustained. It is settled that upon an obligation to do a particular thing, or to pay a debt for which the covenantee is liable, or to indemnify against liability, the right of action is complete on the defendant's failure to do the particular thing he agreed to perform, or to pay the debt or discharge the liability. (*Belloni* v. *Freeborn*, 63 N. Y., 383 ; *Churchill* v. *Hunt*, 3 Denio, 321 ; *Thomas* v. *Allen*, 1 Hill, 145.) The distinc-

tion is clearly defined between such an obligation and an indemnity against loss or damage by reason of a liability. In the former case the covenantee is to be saved from the thing specified, and in the latter from the consequences of it. (*Gilbert* v. *Wiman*, 1 N. Y., 550; 63 N. Y., 383; 3 Denio, 321; 1 Hill, 145.) In both cases courts seek to carry out the contract as made by the parties. In none of the cases was the language more explicit than in this. If Chapman paid the debts of the firm within nine months, the bond in that respect was satisfied; if not, it was in force. Chapman did not pay, and the right of action thereby became complete.

It is insisted that the estate was only liable contingently for these debts, and not until the creditors had exhausted their remedy against Chapman, the surviving partner, and that the authorities cited do not apply. (*Richter* v. *Poppenhausen*, 42 N. Y., 373.) The answer to this is, that the firm business was carried on in the name of Kohler, and the creditors had a right to proceed against him alone, or against his estate, in the first instance, without resorting to Chapman, but it is not intended to decide that the contingent liability referred to would not be sufficient to give the obligee the same rights as if the liability was direct. That point is not in the case.

It is objected that the debts were not proved. The judge finds the amount of the debts against the firm, and that none of them were paid by Chapman, and the evidence was sufficient to justify the finding. The evidence of Spear, the attorney for the plaintiff, so far as he stated facts, was competent upon the question. The presentation of the various claims against the estate, his investigation to prove their correctness, with the evidence of Chapman that they were correct as far as he knew, was sufficient *prima facie* to establish them and warranted the finding.

The counsel for the defendants presented various questions by requests to find, and otherwise, based upon the conduct of the plaintiff in respect to the chattel mortgage before referred to, and the counsel in some of his points seems to

suppose that if the plaintiff by any act or consent had impaired this security, or changed its terms, the sureties would be entirely discharged from their obligation. This is a misapprehension. Any change in the terms of the contract of the principal, for which the sureties are bound, without their consent, would discharge them. The contract is contained in the bond signed by the sureties, and there is no pretense that any of the terms of that instrument were changed, or in any manner affected. The chattel mortgage was held by plaintiff as collateral security, and if the defendants had paid the debts, they would have been entitled to subrogation after the individual interest of the plaintiff had been satisfied. .If the plaintiff, by any act of bad faith, had impaired this security to the injury of the defendants, they might avail themselves of it to the extent of the injury proved (Story's Eq., § 501; *Schroeppell* v. *Shaw*, 3 Comst'k, 457); but it would not release them beyond that.

It was urged upon the trial that the plaintiff had consented to the sale of the three horses. The original contract provided that Chapman might sell three of the horses, and it appeared that he had sold six. I think the referee was justified in refusing to find that the plaintiff consented to the sale of the other three horses. Chapman's evidence, although somewhat confused, tends to prove it; but other evidence tends to show that he represented, down to the time of the foreclosure, that he had the horses in his possession, and when they could not be found he admitted that he had practiced a deception, and refused, upon the urgent solicitation of the plaintiff's attorney, to state to whom they were sold or where they might be. found.

Another point made is, that when the mortgage was renewed in 1874, the certificate stated the interest of the plaintiff at only $2,000; and another point is, that the mortgage was not renewed in 1875, after the foreclosure and sale, so that the property which had been disposed of might be pursued; and still another point is, that the avails of the sale (less than $500) should be applied upon the defendants'

obligation. As to all these points, without discussing their respective merits in other respects, it is sufficient to say that the plaintiff held the mortgage to secure her individual claim for the purchase-money of the property, in preference to any rights which the defendants might have in it as a security for the debts against the firm, and from the evidence the property mortgaged was not worth more than the balance due after the payment of one of the notes of $1,000, so that it does not appear that the defendants would have been injured if the mortgage had been released. The whole value of the mortgage belonged to the plaintiff. The result, as it turned out, was that the plaintiff, upon the foreclosure and sale of all the property that could be found, realized less than $500, leaving a deficiency of over $1,500 unpaid; and it may be added that there is nothing in the case to show that she was in fault for the missing property, and she was the sole loser by reason of it. The defendants had no interest in it, and it follows that they were not entitled to credit for any part of the avails of the sale. The judgments and executions against Chapman, and the proof of payment of the debts were unnecessary to enable the plaintiff to recover in this action, but this evidence shows that the plaintiff had been actually damnified to the amount that she claims to recover in this action.

We are unable to find any error in the trial which would justify a reversal of the judgment, and it must be affirmed.

All concur.

Judgment affirmed.