THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* AMERICAN
SURETY COMPANY OF NEW YORK, Appellant.

Third Department, May 15, 1934.

*Phillips, Mahoney, Leibell & Fielding* [*Jeremiah T. Mahoney* and
*George A. Spohr, Jr.,* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Hugh Reilly, Assistant
Attorney-General,* and *Henry Epstein, Solicitor-General,* of counsel],
for the respondents.

HILL, P. J. The defendant appeals from a judgment recovered
by the State of New York for the unpaid balance of the State
deposit in the First National Bank of Hornell, N. Y. The deposit
on February 13, 1932, was $60,000, with interest. The bank
was closed on that day by the order of the Comptroller of the Cur-
rency of the United States. Defendant, by its bond, had insured
the safe-keeping and the payment on demand of the deposit, as
required by section 8 of the State Finance Law. During liquidation
forty per cent has been paid.

Long prior to 1932 defendant had written its bond for $112,000,
insuring deposits to that amount which the State might have in
the bank. The bond had been continued upon payment of a sub-

stantial annual premium. On the day that the bank closed the State had in its possession $60,000 face value of New York State gold notes, maturing May 1, 1932. These had been purchased a few days earlier by the bank and under its direction had been delivered to the Comptroller of the State in furtherance of a plan that they should be substituted in place of defendant's bond as security for the State deposit. The position of the defendant is that the substitution of security actually had been effected and as a result its liability on the bond terminated, but if it should be determined the negotiations had not progressed sufficiently to bring about a novation, the notes in the possession of the State were collateral security for the deposit and for defendant's bond, and their return by the State to the bank released the defendant as security; also that it was the duty of the State to assert an offset of its deposit in the bank, which became due on demand, against the debt of the State to the bank, arising through the latter's ownership of the notes.

On February tenth a State official in a letter to the bank acknowledged receipt of the notes and stated; " If it is your intention to substitute them in place of the above named surety bond [defendant's] it is requested that you execute the enclosed forms as follows: Form A, the principal undertaking should be .executed by your bank for $60,000. The assignments, Form C, are to be executed in duplicate, seal of your bank stamped where required and both returned to this office. In due course there will be forwarded to you a certificate of deposit for $60,000, together with releases of your $112,000 surety bond." The bank did not execute the new undertaking or the assignments, and the State did nothing further in connection with the substitution. Some weeks later the bonds were returned to the bank or its liquidator. Defendant had been informed of the contemplated substitution. Shortly before February sixth, when the annual premium would be due, defendant's Buffalo manager at the request of the cashier of the bank, consented that the bond be continued until substitution was effected, and later presented a claim to the liquidator of the bank for $73.03 premium earned on the bond from the sixth to the twenty-third of February. The letter accompanying the claim states: " The bond ran to the State of New York and was continuous in form and could not be cancelled until we received release from the State of New York. This was pending at the time the bank closed and you will, therefore, see that we are entitled to the premium as earned from February 6 to February 23."

The evidence sustains the finding made by the trial court that defendant's bond of guaranty was in effect and valid at the time

repayment of the deposit was refused after the closing of the bank and that the substitution of State bonds had not been completed

Defendant is a compensated and not a gratuitous surety. The law governing insurance policies or contracts is applicable to a contract of guaranty made by a surety company. Such a company, in consideration of a premium which, after investigation, it believes will be profitable, issues its policy or bond guaranteeing the performance of its principal's contract. The obligations, liabilities and duties of the surety, obligor and obligee are fixed by the terms of the contract. (*Town of Whitestown* v. *Title Guaranty & Surety Co.*, 72 Misc. 498; affd., 148 App. Div. 900; affd., 209 N. Y. 512; *People* v. *Metropolitan Surety Co.*, 205 id. 135, 142.) The $60,000 of notes belonged to the bank. Nothing in the contract between the surety company, the bank and the State gave the surety company a claim upon them. Even a gratuitous surety is not released when the obligee returns to the principal property held in connection with an independent transaction. (*Kohler* v. *Matlage*, 72 N. Y. 259; *First National Bank* v. *Wood*, 71 id. 405; *Sterne* v. *Talbott*, 89 Hun, 368; *Bixby* v. *Barklie*, 26 id. 275.) An offset would have been inequitable. The right of offset is founded upon principles of benevolence and is " ' the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it.' " (*Gerseta Corp.* v. *Equitable Trust Co.*, 241 N. Y. 418, 426.) In equity, this paid surety enjoys no preference as against the creditors of the insolvent bank.

The judgment should be affirmed.

RHODES, McNAMEE, CRAPSER and BLISS, JJ., concur.

Judgment affirmed, with costs.