STATE OF CONNECTICUT *v.* ANONYMOUS (1971–20)*

CIRCUIT COURT

JACOBS, J. This is a three-count information charging the defendant with (1) failure to keep drugs in original container (General Statutes

---

* Opinions on preliminary motions in criminal cases are thus entitled, in view of General Statutes § 54-90.

§ 19-464) ; (2) illegal possession of controlled drugs (§ 19-481 [b]) ; and (3) reckless use of the highway by a pedestrian (§ 53-182).

The question raised by the motion to suppress (§ 54-33f) falls into the category of "stop and frisk" cases which has a background of controversy and inconsistent judicial treatment. The words "stop" and "frisk" are convenient ways of describing certain limited intrusions.[1]

The United States Supreme Court for the first time confronted the "stop and frisk" issue in *Terry v. Ohio*, 392 U.S. 1; *Sibron v. New York*, 392 U.S. 40; and *Peters v. New York*, 392 U.S. 40.[2] In *Terry*, the anticipated crime was armed robbery; in *Peters* it was burglary—both serious offenses and not infrequently attended by violence; in *Sibron*, on the other hand, the anticipated crime involved possession of narcotics.

"Stop and frisk" has been referred to as a "low visibility" police procedure, and it was so characterized in *Sibron v. New York*, supra, 52. Stop and frisk practices were investigated by the President's Commission on Law Enforcement and Administration of Justice, which recommended that state legislatures enact statutory provisions prescribing the authority of law enforcement officers to stop persons for brief questioning.[3] The National Advisory Com-

---

[1] The normal technique by which police conduct a frisk is "to require the individual to place his hands on a vehicle or wall and to extend his feet out from the object which is supporting his hands," and then proceed to determine whether he is armed. See Pilcher, "The Law and Practice of Field Interrogation," 58 J. Crim. L.C. & P.S. 465, 488.

[2] The *Terry, Sibron* and *Peters* cases cover a total of eighty-two pages in the official reports. A fourth case also involved a stopping for investigation, but the writ of certiorari was dismissed as improvidently granted. *Wainright v. New Orleans*, 392 U.S. 598.

[3] "The Challenge of Crime in a Free Society," Report of President's Comm'n on Law Enforcement and Administration of Justice, p. 95 (1967).

mission on Civil Disorders agreed that guidelines for "field interrogation" and its incidents were needed and that it was imperative for police and others to distinguish legitimate investigative procedures from somewhat similar actions of dubious legality and efficacy (often called "aggressive preventive patrol").[4]

In *Sibron* v. *United States,* supra, the court said (p. 59): "The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case."

The facts in the instant case are as follows: The state trooper who stopped the defendant had no arrest or search warrant. At the time, the officer had no knowledge of specific narcotics offenses or similar violations in the vicinity. The multiple-lane limited-access highway on which the trooper was driving is, in the vicinity in question, used exclusively for passenger motor vehicles; no commercial or pedestrian traffic is allowed in the area. As the trooper was proceeding northbound in the police cruiser, he "observed the accused crossing the southbound lane . . . he was crossing the lanes, and he went on the median divider." The officer testified, "When he [the accused] got on the median divider, he crossed the guardrail, he crossed over; then, he crossed the northbound lanes." The officer thereupon pulled his vehicle over to the right-hand shoulder of the northbound lane and got out of his cruiser. He was about twenty to twenty-five feet from the defendant. The officer "called him over," and asked him what he was "doing out there, there is [sic] no pedestrians allowed out there, and running across the highway is reckless use of the highway by a pedestrian." The defendant stated that

---

[4] Report of Nat'l Advisory Comm'n on Civil Disorders, pp. 159–61, 164–65 (1968).

he "just hitchhiked from Massachusetts." The officer asked the defendant to produce some form of identification, but he "didn't have any." He said he "lost it." The officer testified, "I was going to issue [the defendant] a summons for reckless use of the highway by a pedestrian, but he had no identification." The defendant was told "to place his hands on the hood of the [police] car." The officer "patted him down for weapons." No weapons were uncovered. The "patting-down" did uncover narcotics.

On oral argument, the defendant conceded that the officer had probable cause to arrest him for illegal use of the highway; however, the claim was made that the officer did not have the right "to make this intrusive kind of search that he did here."

The reasonableness of the stop is conceded. A stop involves a temporary restraint of the person's freedom to walk away and is a seizure within fourth amendment dimensions.

The next question the court must consider calls for an analysis of the extent of the stop, both in the duration and in the scope of the questioning. The initial questioning may assure the officer that no further investigation is necessary. Conversely, the answers given by the stopped person may cause the officer to believe more strongly that something is amiss. The use of the highway by the defendant and his inability to produce identification of any kind were sufficient circumstances to alert the officer that something was amiss. In *Terry* v. *Ohio,* 392 U.S. 1, 30, the court said: "Each case of this sort will, of course, have to be decided on its own facts. We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous,

where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own... safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons . . . ." See *State* v. *Dilley,* 49 N.J. 460, 468 (the action taken by the policeman should be judged by its "reasonableness in the totality of the circumstances").

The court must proceed to consider the reasonableness of the frisk, which is a separate issue from that of the reasonableness of the stop.

A frisk involves the patting-down a person's outer clothing by a police officer. See *People* v. *Rivera,* 14 N.Y.2d 441, 446. This is a serious intrusion upon an individual's freedom and right to privacy. Cf. *Katz* v. *United States,* 389 U.S. 347, 365. Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial.

Where, as in the case at bar, the officer does not feel an object which seems to be a weapon, but feels a package which he believes might be evidence of some crime, such as the possession of narcotics, the question arises whether he must terminate his search or whether he may reach into the person's pocket and bare whatever it holds. "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* v. *Ohio,* supra, 29. In other words, an extended search, exceeding the purpose

of the frisk, would be constitutionally unreasonable, and any evidence thereby obtained must be excluded. "Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents." *Sibron* v. *New York,* 392 U.S. 40, 65.

In *Terry* v. *Ohio,* supra, the court's emphasis upon the procedures followed by the officer indicates that a two-step process must ordinarily be followed: (1) The officer must pat down first, and (2) then intrude beneath the surface only if he comes upon something which feels like a weapon.

In the present case, this court concludes that it was not unreasonable for the police officer to stop the defendant at the time and place in question, to take reasonable precautions for his own safety, and to submit the defendant to a superficial search for concealed weapons. Moreover, as the United States Supreme Court cases point out, when a police officer stops a person on the street for summary inquiry, the incidental temporary detention is not to be viewed as a formal arrest requiring probable cause. Thus, the pat-down here was entirely proper and justified by the circumstances. But after the pat-down, the officer having felt nothing which resembled concealed weapons, such as guns, knives, clubs or other hidden instruments, his authority to search terminated when he ascertained that the defendant was not armed. See *State* v. *Campbell,* 97 N.J. Super. 435, petition for leave to appeal granted, 51 N.J. 388 (conviction reversed).

The motion to suppress is granted for the reasons herein stated.

The motion for return of the articles seized is denied for the reason that the articles in question are contraband.